# Exhibit A

2391562
15

2011 AUG -3 AM 11: 41

IN THE CIRCUIT COURT FOR THE STATE OF OREGON
IN AND FOR THE COUNTY OF WASHINGTON

JPMORGAN CHASE BANK, NATIONAL )
ASSOCIATION, its successors in interest )  Case No. C11 3755 CV
and/or assigns, and NORTHWEST TRUSTEE )
SERVICES, INC.                          )  **CERTIFICATE OF SERVICE**
                                        )
                    Plaintiffs,         )
                                        )
        vs.                             )
                                        )
UNITED STATES OF AMERICA                )
DEPARTMENT OF THE TREASURY -            )
INTERNAL REVENUE SERVICE,               )
                                        )
                    Defendant.          )
_____)

1.

I hereby certify under penalty of perjury under the laws of the State of Oregon that I mailed a true and correct copy of the Summons and Complaint, along with all of the Exhibits attached therein, postage pre-paid, United States Mail, in the manner described to the parties listed below on this 26th day of July, 2011.

///

///

CERTIFICATE OF SERVICE – 1

5-61-8881

NEW
SEND TO FILE
PROMPTLY AFTER
ACTION THIS ITEM

DEPARTMENT OF JUSTICE

AUG 03 2011

ROUTH
CRABTREE
OLSEN, P.C.

621 SW Alder St., Ste 900
Portland, OR 97205-3623
Telephone: 503.977.7840
Facsimile: 503.977.7963

RCO File No. 7604.52868

1    DATED: July 26, 2011.

2

3                                          **ROUTH CRABTREE OLSEN, P.C.**

4                                    By:    *Mary Cannon*

5                                          Mary Cannon Paralegal
                                           Attorneys for Plaintiff
6                                          621 SW Alder St., Suite 800
                                           Portland, OR 97205-3623
7                                          Phone: 503-546-2997
                                           mcannon@rcolegal.com

8

9

10   **By First Class & Certified, Return Receipt Requested US Mail**
     Attn: Sean Martin
     U.S. Attorneys Office
11   1000 SW 3rd Ave, Ste. 600
     Portland, OR 97204-2902
12

13   **By First Class & Certified, Return Receipt Requested US Mail**
     U.S. Attorney General
14   Attn: Eric H. Holder, Jr.
     5111 Main Justice Bldg.
15   10th & Constitution Ave. NW
     Washington, D.C. 20530
16

17

18

19

20

21

22

23

24

25

26

     CERTIFICATE OF SERVICE – 2

                                             ROUTH          621 SW Alder St., Ste. 800
                                             CRABTREE       Portland, OR 97205-3623
                                                            Telephone: 503.977.7840
                                             OLSEN, P.C.    Facsimile: 503.977.7963

IN THE CIRCUIT COURT FOR THE STATE OF OREGON
IN AND FOR THE COUNTY OF WASHINGTON

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, its successors in interest
and/or assigns, and NORTHWEST TRUSTEE
SERVICES, INC.

                  Plaintiffs,

vs.

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY -
INTERNAL REVENUE SERVICE,

                  Defendant.

Case No.  *C11 3755 CV*

**SUMMONS**

**TO THE DEFENDANT:** United States of America Department of the Treasury – Internal

Revenue Service.

1.

You are hereby required to appear and defend the Complaint filed against you in this case

within 30 days from the date of the service of this summons upon you. If you fail to appear and

defend, the Plaintiff will apply to the court for the relief demanded in the Complaint.

2.

**NOTICE TO DEFENDANTS:**

SUMMONS – 1

ROUTH
CRABTREE
OLSEN, P.C.

621 SW Alder St., Ste. 800
Portland, OR 97205-3623
Telephone: 503.977.7840
Facsimile: 503.977.7963

RCO File No. 7604.52868

1

**READ THESE PAPERS CAREFULLY!**

2

A lawsuit has been started against you in the above-entitled court by Plaintiffs , JPMorgan

3

Chase Bank, National Association, its successors in interest and/or assigns ("Chase"), and Northwest

4

Trustee Services, Inc.("NWTS"). Plaintiffs' claims are stated in the written Complaint, a copy of

5

which is served upon you with this Summons.

6

7

3.

8

**You must "appear" in this case or the other side will win automatically. To "appear" you**

9

**must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer"**

10

**must be given to the court clerk or administrator within 30 days *(or 60 days for Defendant United***

11

***States or State of Oregon Department of Revenue)* along with the required filing fee. It must be in**

12

**proper form and have proof of service on the Plaintiff's attorney or, if the Plaintiff does not have**

13

**an attorney, proof of service on the Plaintiff.**

14

15

4.

16

**If you have any questions, you should see an attorney immediately. If you need help in**

17

**finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-**

18

**3763 or toll-free in Oregon at (800) 452-7636.**

19

20

5.

21

**This summons is issued pursuant to ORCP 7.**

22

///

23

///

24

///

25

26

SUMMONS – 2

ROUTH
CRABTREE
OLSEN, P.C.

621 SW Alder St., Ste. 800
Portland, OR 97205-3623
Telephone: 503.977.7840
Facsimile: 503.977.7963

RCO File No. 7604.52868

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**ROUTH CRABTREE OLSEN, P.C.**

By: _____

John Thomas, OSB # 024691
Attorneys for Plaintiffs
621 SW Alder St., Suite 800
Portland, OR 97205-3623
Phone: 503-517-7180
Fax: 503-977-7963
jthomas@rcolegal.com

SUMMONS – 3

ROUTH
CRABTREE
OLSEN, P.C.

621 SW Alder St., Ste. 800
Portland, OR 97205-3623
Telephone: 503.977.7840
Facsimile: 503.977.7963

RCO File No. 7604.52868

1
2
3
4
5
6            IN THE CIRCUIT COURT FOR THE STATE OF OREGON
7                   IN AND FOR THE COUNTY OF WASHINGTON

8   JPMORGAN CHASE BANK, NATIONAL        )
9   ASSOCIATION, its successors in interest )   Case No. *C11 3755CV*
    and/or assigns, and NORTHWEST TRUSTEE )
10  SERVICES, INC.                         )   **COMPLAINT FOR STRICT**
                                           )   **FORECLOSURE**
11                  Plaintiffs,            )
                                           )   (PRAYER AMOUNT: No Monetary
12  vs.                                    )   Relief)
                                           )
13  UNITED STATES OF AMERICA               )   (Not Subject to Mandatory Arbitration)
14  DEPARTMENT OF THE TREASURY -           )
    INTERNAL REVENUE SERVICE,              )
15                                         )
16                  Defendant.             )
                                           )

17       Plaintiffs, JPMorgan Chase Bank, National Association, its successors in interest and/or
18
19  assigns ("Chase"), and Northwest Trustee Services, Inc.("NWTS") (collectively "Plaintiffs"), by and
20  through their counsel of record, Routh Crabtree Olsen, P.C. and John Thomas, file this Complaint
21  for Strict Foreclosure on the property located at 767 Northwest Darnielle Street, Hillsboro, Oregon
22  97124. Plaintiff states and alleges as follows:
23                          **I. VENUE AND JURISDICTION**
24
                                      1.
25
26       This complaint arises out of dealings between the parties with respect to a residential Deed of

COMPLAINT FOR STRICT FORECLOSURE – 1

ROUTH           621 SW Alder St., Ste. 800
CRABTREE        Portland, OR 97205-3623
                Telephone: 503.977.7840
OLSEN, P.C.     Facsimile: 503.977.7963

RCO File No. 7604.52868

1   Trust on the subject real property. The subject real property is situated in Washington County, Oregon.

2   Both the Plaintiff and the Defendant having actual or contingent interest therein, and further for the

3   purpose of declaring the first priority lien position of the deed of trust, the Court has venue and

4
5   jurisdiction over this proceeding pursuant to ORS 14.040 and ORCP 4F.

6                              **II. DESCRIPTION OF REAL ESTATE**

7                                                    2.

8           The real property subject to this action and encumbered by the Deed of Trust is legally

9   described as:

10          Lot 32, Padgett Park, in the City of Hillsboro, County of Washington and State of
11          Oregon..

12   The real property subject to this action and which was encumbered by the Deed of Trust is more

13   commonly known as 767 Northwest Darnielle Street, Hillsboro, Oregon 97124 ("Property").

14                                        **III. PARTIES**

15
16                                                   3.

17          PLAINTIFFS: Plaintiff Chase is a foreign corporation and is authorized to bring suit pursuant

18   to ORS 14.040(4). Plaintiff is the owner of the Property. Co-Plaintiff NWTS handled the foreclosure

19   of the Property non-judicially via advertisement and sale.

20                                                   4.

21
22          DEFENDANT UNITED STATES OF AMERICA DEPARTMENT OF THE TREASURY -

23   INTERNAL REVENUE SERVICE: Defendant United States of America Department of the

24   Treasury - Internal Revenue Service has a tax lien against the prior owners of the Property, Dan E.

25   Williamson and Shannon Williamson (the "Williamsons") pursuant to a Notice of Federal Tax Lien

26

COMPLAINT FOR STRICT FORECLOSURE – 2

ROUTH
CRABTREE
OLSEN, P.C.

621 SW Alder St., Ste. 800
Portland, OR 97205-3623
Telephone: 503.977.7840
Facsimile: 503.977.7963

RCO File No. 7604.52868

1   dated July 16, 2010 and recorded July 23, 2010 as Document No. 2010-056015 ("Tax Lien"). A true

2   and accurate copy of the Tax Lien is attached hereto as Exhibit A. Any interest claimed by said

3   Defendant in the Property may not have been extinguished via a non-judicial foreclosure (trustee's

4   sale) of a Deed of Trust held by Plaintiff Chase as successor-in-interest to the original beneficiary as

5

6   purchaser of the assets of Washington Mutual Bank from the FDIC as receiver; Plaintiffs seek to

7   strictly foreclose any such interest of the Defendant via this action.

8                                    **IV. BACKGROUND FACTS**

9                                                5.

10

11   EXECUTION OF DEED OF TRUST & PROMISSORY NOTE: Within the State of Oregon

12   and for valuable consideration, on June 11, 2007, the Williamson made, executed and delivered to

13   Washington Mutual a Deed of Trust by which they deeded in trust to Washington Mutual all the

14   Property in order to secure the payment of a promissory note (the "Note") in writing, which they

15   executed at the same place and time as the Deed of Trust. A true copy of the Deed of Trust is attached

16   hereto as Exhibit B.

17

18                                               6.

19   The Deed of Trust was duly acknowledged in the manner required for recording in the real

20   property records of Washington County, Oregon. *See Ex. A.* Subsequent thereto, Plaintiff NWTS was

21   appointed as Successor Trustee by Appointment of Successor Trustee recorded on July 30, 2009 as

22   Document No. 2009-070153. A true and accurate copy of the Appointment of Successor Trustee is

23   attached as Exhibit C.

24

25                                               7.

26   NON-JUDICIAL FORECLOSURE: As a result of the Williamson's default under the Note

COMPLAINT FOR STRICT FORECLOSURE – 3

ROUTH
CRABTREE
OLSEN, P.C.

621 SW Alder St., Ste. 800
Portland, OR 97205-3623
Telephone: 503.977.7840
Facsimile: 503.977.7963

1  and Deed of Trust, the Successor Trustee commenced a non-judicial foreclosure of the Property

2  pursuant to 86.705 *et seq*. As evidence of such foreclosure, the Successor Trustee recorded a Notice of

3  Default and Election to Sell in the records of Washington County on December 29, 2008 as Document

4  No. 2010-053061. The Successor Trustee also recorded an Affidavit of Mailing Trustee's Notice of

5

6  Sale in the records of Washington County on November 16, 2010 as Document No. 2010-091604.

7  Plaintiff Chase was the successful bidder at the Successor Trustee's auction of the Property on March

8  29, 2011. On September 25, 2009, the NWTS as Successor Trustee conveyed to Plaintiff Chase a

9  Trustee's Deed, which was recorded April 6, 2011 as Document No. 2011-026163. True and accurate

10  copies of the Notice of Default and Election to Sell, the Affidavit of Mailing Trustee's Notice of Sale,

11

12  and Trustee's Deed are attached hereto as Exhibits D through F respectively.

13                                               8.

14        DEFENDANT'S OMITTED JUNIOR LINEHOLDER STATUS: After the non-judicial

15  foreclosure was completed, Plaintiff NWTS discovered that it may not have provided notice of the

16  trustee's sale to Defendant, and to that extent, Defendant's Tax Lien may be an omitted lien, junior

17  to Plaintiff's interest. To the extent that Defendant has any right to redeem the Property, Plaintiff now

18

19  seeks to strictly foreclose any such right of redemption that may exist, or alternatively, have the court

20  declare that no such right exists.

21                     **VI. CLAIM FOR RELIEF – STRICT FORECLOSURE**

22                                               9.

23        Plaintiff re-alleges paragraphs 1-8 of its Complaint.

24                                              10.

25

26        The prior owners of the Property defaulted on the Note and Deed of Trust. As a result of such

COMPLAINT FOR STRICT FORECLOSURE – 4

ROUTH
CRABTREE
OLSEN, P.C.

621 SW Alder St., Ste. 800
Portland, OR 97205-3623
Telephone: 503.977.7840
Facsimile: 503.977.7963

RCO File No. 7604.52868

1  default, the Successor Trustee enforced the Deed of Trust via foreclosure by advertisement and sale

2  pursuant to ORS 86.740 to 86.755. To the extent that Defendant has any right to redeem the Property

3  as an "omitted person," pursuant ORS 86.742 (6), Plaintiff is entitled, and now seeks, to foreclose

4
5  strictly Defendant's claimed right of redemption by requiring Defendant to redeem the Property now, or

6  be forever barred from redeeming the Property or otherwise having any remaining interest therein

7  whatsoever.

8                                              11.

9      The terms of the Note and Deed of Trust provide that in the event of any action to collect the

10 Note or to foreclose the Deed of Trust there shall be recoverable a reasonable sum for attorney's fees

11
   and costs.
12

13                                             12.

14 Plaintiff has no adequate remedy at law.

15                          **VII. PRAYER FOR RELIEF**

16                                             13.

17
   WHEREFORE, on Plaintiffs' Claim for Relief, Plaintiffs request a general judgment of strict
18

19 foreclosure from this Court as follows:

20     A.     That Defendant be ordered to redeem the Property within 30 days or otherwise be

21 forever barred from redeeming the Property or otherwise having any remaining interest therein

22 whatsoever.

23
       B.     A general judgment of foreclosure of all of Defendant's interest and right in the
24
   Property, including any claimed right of redemption, in the event that Defendant fails to redeem the
25

26 Property within the time period ordered by the court.

COMPLAINT FOR STRICT FORECLOSURE – 5

ROUTH
CRABTREE
OLSEN, P.C.

621 SW Alder St., Ste. 800
Portland, OR 97205-3623
Telephone: 503.977.7840
Facsimile: 503.977.7963

1    C.    For reimbursement of Plaintiffs' attorney's fees and costs against Defendant should this

2    matter be contested; and,

3        D.    For such other and further relief as the court may deem proper.

4    DATED: ~~June~~ July 1, 2011.

5

6                                    **ROUTH CRABTREE OLSEN, P.C.**

7                              By:    _____

8                                    John Thomas, OSB # 024691
                                     Attorneys for Plaintiffs
9                                    621 SW Alder St., Suite 800
                                     Portland, OR 97205-3623
10                                   Phone: 503-517-7180
                                     Fax: 503-977-7963
11                                   jthomas@rcolegal.com

12   I hereby certify that the within is
     a true copy of the original Complaint
13   in the within entitled action

14   _____

15   John Thomas, OSB# 024691

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR STRICT FORECLOSURE – 6

ROUTH
CRABTREE
OLSEN, P.C.

621 SW Alder St., Ste. 800
Portland, OR 97205-3623
Telephone: 503.977.7840
Facsimile: 503.977.7963

RCO File No. 7604.52868

Washington County, Oregon       2010-056015
07/23/2010 04:13:34 PM
D-LF          Cnt=1 Stn=3 T EAKIN
$10.00 - Total = $10.00

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

EXHIBIT _A_

PAGE _1_ OF _2_

10182

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #6 Lien Unit Phone: (800) 829-3903 | Serial Number 679245010 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer   SHANNON SUZANNE WILLIAMSON

Residence      767 NW DARNIELLE ST
               HILLSBORO, OR 97124-2217

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 941 | 09/30/2008 | 20-5906131 | 12/28/2009 | 01/27/2020 | 4286.19 |
| 941 | 12/31/2008 | 20-5906131 | 12/28/2009 | 01/27/2020 | 4882.31 |
| 941 | 03/31/2009 | 20-5906131 | 12/28/2009 | 01/27/2020 | 1734.08 |

| Place of Filing | COUNTY CLERK WASHINGTON COUNTY HILLSBORO, OR 97123 | Total | $ | 10902.58 |
|---|---|---|---|---|

This notice was prepared and signed at      SEATTLE, WA                                      , on this,

the ____16th____ day of ___July___, 2010.

| Signature  *K. A. Mitchell*  for MICHAEL W. COX | Title ACS  (800) 829-3903 | 26-00-0008 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part I - Kept By Recording Office   EXHIBIT __A__

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X

Washington    Oregon    2007-068698
06/2L    02:49:12 PM
D-M         Cnt=1 Stn=16 D HOFFMAN
$65.00 $6.00 $11.00 - Total = $112.40

Richard Hobernicht, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.

Richard Hobernicht, Director of Assessment and Taxation, Ex-Officio County Clerk

Until a change is requested all tax statements shall be sent
to the following address:

WHEN RECORDED MAIL TO
Washington Mutual Bank
2210 Enterprise Drive   Doc Ops - MS SC00140
Florence, SC 29501

TAX ACCOUNT NUMBER
R759496
True and Actual Consideration is:
$ 254,000.00

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 11, 2007, together with all Riders to this document.

(B) "Borrower" is Dan E Williamson and Shannon Williamson, Husband And Wife As Joint Tenants

Borrower is the trustor under this Security Instrument.

(C) "Lender" is Washington Mutual Bank

Lender is a federal association
organized and existing under the laws of the United States
Lender's address is 1400 South Douglass Road,  Suite 100, Anaheim, CA 92806

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is LAND AMERICA

0730247715

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3038 1/01

VMP®-6(OR) (0510)
Page 1 of 15   Initials
VMP Mortgage Solutions, Inc.

EXHIBIT B
PAGE 1 OF 19

(E) "Note" means the promissory note signed by Borrower and dated **June 11, 2007**.
The Note states that Borrower owes Lender **Two Hundred Fifty Four Thousand and No/100**
Dollars
(U.S. $ **254,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **July 1, 2037**.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider   ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider       ☒ Other(s) [specify]
                                                          Interest Only Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

0730247715
Form 3038 1/01

EXHIBIT B
PAGE 2 OF 19

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **WASHINGTON**

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

**Legal Description Attached Hereto And Made A Part Hereof**

which currently has the address of

**767 NW Darnielle Street**                               [Street]

**Hillsboro**                          [City], Oregon **97124**     [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0730247715

VMP6A(OR) (0810)                    Page 3 of 16                    Form 3038   1/01

EXHIBIT _B_
PAGE _3_ OF _19_

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender, in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

0730247715

Form 3038  1/01

EXHIBIT  B
PAGE  4  OF  19

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

6(OR) (0510)　　　Page 5 of 15　　　0730247715　Form 3038　1/01

EXHIBIT _B_
PAGE _1_ OF _19_

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(OR) (0810)                    Page 6 of 17                    Form 3038  1/01

0730247715

EXHIBIT  B
PAGE  6  OF  19

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0730247715

Form 3038 1/01

EXHIBIT B
PAGE 7 OF 19

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

0730247715

-8(OR) (0310)                    Page 8 of 15                    Form 3038 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0730247715

-6(OR) (0610)   Page 9 of 15   Form 3038   1/01

EXHIBIT _B_
PAGE _9_ OF _19_

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

VMP -6(OR) (0810)

0730247715

Form 3038  1/01

EXHIBIT ___B___
PAGE _10_ OF _19_

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

EXHIBIT  _B_
PAGE  _11_ OF _19_

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(OR) (os o)    Page 12 of 15    Initials ___    0730247715    Form 3038  1/01

EXHIBIT ___B___
PAGE _12_ OF _19_

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Attorneys' Fees. As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. Protective Advances. This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. Required Evidence of Property Insurance.

WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

VMP®-6(OR) (0810)

Page 13 of 15

Initials

0730247715

Form 3038   1/01

EXHIBIT B
PAGE 13 OF 19

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____       _____ (Seal)
                                      Shannon Williamson              -Borrower

_____       _____ (Seal)
                                      Dan R Williamson               -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                    -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                    -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                    -Borrower

0730247715

-6(OR) (0512)          Page 14 of 15          Form 3038  1/01

EXHIBIT B
PAGE 14 OF 19

STATE OF OREGON,                                    County ss:  Washington
On this    11th day of    June , 2007 personally appeared the above named:

Shannon Williamson + Dan E. Williamson

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires:  2/24/09          Before me:  M. Ellis

(Official Seal)                                     M. Ellis
                                                    _____
                                                    Notary Public for Oregon



OFFICIAL SEAL
M ELLIS
NOTARY PUBLIC OREGON
COMMISSION NO. A382989
MY COMMISSION EXPIRES FEBRUARY 24 2009

4 (OR) (0910)                    Page 15 of 15          Initials          0730247715
                                                                          Form 3038  1/01

EXHIBIT  B
PAGE  15  OF  19

## EXHIBIT A

THE FOLLOWING DESCRIBED REAL PROPERTY FREE OF ENCUMBRANCES, EXCEPT AS SPECIFICALLY SET FORTH HEREIN SITUATED IN WASHINGTON COUNTY, OREGON, TO WIT:

LOT 32, PADGETT PARK, IN THE CITY OF HILLSBORO, COUNTY OF WASHINGTON AND STATE OF OREGON.

TAX ID #: R759496

BY FEE SIMPLE DEED FROM MONIQUE SPENCER AS SET FORTH IN INSTRUMENT NO. 2004-044390 AND RECORDED ON 4/26/2004, WASHINGTON COUNTY RECORDS.

THE SOURCE DEED AS STATED ABOVE IS THE LAST RECORD OF VESTING FILED FOR THIS PROPERTY. THERE HAVE BEEN NO VESTING CHANGES SINCE THE DATE OF THE ABOVE REFERENCED SOURCE.

EXHIBIT _B_
PAGE _16_ OF _19_

# FIXED ADJUSTABLE RATE RIDER
### (Initial Interest Only Payments)
### (LIBOR Index - Rate Caps)

THIS FIXED ADJUSTABLE RATE RIDER (Initial Interest Only Payments) is made this 11th day of June, 2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Fixed Adjustable Rate Note (Initial Interest Only Payments) (the "Note") to Washington Mutual Bank

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: 767 NW Darrielle Street, Hillsboro, OR 97124

(Property Address)

THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 8.125 %. The Note provides for changes in the interest rate and the monthly payments as follows:

## 3. PAYMENTS
### (A) Time and Place of Payments
I will make payments every month.

I will make my monthly payments on the first day of each month beginning on August 1st, 2007 I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. My monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 1, 2037 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at: Washington Mutual Bank, P.O. Box 3139, Milwaukee, WI 53201-3139 or at a different place if required by the Note Holder.

Beginning with the monthly payment that is due on August 1, 2007 and continuing through and including the monthly payment that is due on July 1, 2014 I will pay monthly payments of all interest that accrues on the unpaid principal at the interest rate described in Section 2 of this Note. The period during which I will pay these interest only payments is called the "interest only period."

Beginning with the monthly payment that is due on August 1, 2014 I will pay monthly payments of principal and interest. The period during which I will pay monthly payments of principal and interest is called the "amortization period."

### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,719.79 This amount will change.

### (C) Monthly Payment Changes
During the interest only period, changes in my monthly payment will reflect changes in the unpaid principal of my loan, such as following a partial prepayment (as that term is defined in Section 5 of this Note). My monthly payment will also change during the amortization period, at which time my monthly payments will include both principal and interest and will reflect changes in the interest rate that I must pay. The Note Holder will determine the changed amount of my monthly payment during the amortization period in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay will change on the first day of July, 2012 , and on that day every 6 months thereafter as stated in this Section 4. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

MULTISTATE INTEREST-ONLY RIDER
4140745 (0512)
Page 1 of 3
VMP Mortgage Solutions, Inc.

0730247715

EXHIBIT B
PAGE 17 OF 19

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Five and 49/100 percentage point(s) ( 5.490 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.125 % or less than 8.125 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than One & 50/100 percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.125 % or less than 8.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Covenant 18 of the Security Instrument is amended as follows:

(A) Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 of the Note, Covenant 18 of the Security Instrument provides as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 of the Note, Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Covenant 18 of the Security Instrument shall instead provide as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

EXHIBIT ___ B

PAGE 18 OF 19

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider (Initial Interest Only Payments).

_____ (Seal)                    _____ (Seal)
Shannon Williamson        -Borrower          Dan B. Williamson          -Borrower

_____ (Seal)                    _____ (Seal)
                          -Borrower                                                     -Borrower

*[Sign Original Only]*

4140745 (0512)                        Page 3 of 3                              0730247715

EXHIBIT _B_
PAGE _19_ OF _19_

## APPOINTMENT OF SUCCESSOR TRUSTEE

KNOW ALL MEN BY THESE PRESENTS that Dan E Williamson and Shannon Williamson, Husband and Wife as joint tenants, as grantors, and Land America, as the trustee, and Washington Mutual Bank, is the beneficiary under that certain trust deed dated 06/11/07, and recorded 06/20/07, as 2007-068698 of the Mortgage Records of Washington County, Oregon. The undersigned, who is the present beneficiary under said trust deed desires to appoint a new trustee in the place and stead of the original trustee named above;

NOW THEREFORE, in view of the premises, the undersigned hereby appoints Northwest Trustee Services, Inc., whose address is P.O. Box 997, Bellevue, WA 98009-0997 as successor trustee under said trust deed, to have all the powers of said original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned beneficiary has executed this document. If the undersigned is a corporation, it has caused its name to be signed and its seal affixed by an officer or other person duly authorized to do so by its board of directors.

JPMorgan Chase Bank, National Association, as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA (the "Savings Bank") from the Federal Deposit Insurance Corporation, acting as receiver for the Savings Bank and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d)

By _____
Typed Name:     Christina Allen
Title:     Attorney in Fact

State of     Minnesota          )
                                ) ss.
County of     Dakota            )

This instrument was acknowledged before me on     JUL 16 '09     by     Christina Allen
as     Attorney in Fact     of     JPMorgan Chase Bank NA

_____
Notary signature
My commission expires     1-31-2013

CARMELA D. LAGARILE
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2013

APPOINTMENT OF SUCCESSOR TRUSTEE
Re: Trust Deed from
Williamson, Shannon and Dan E.
            Grantor
    to
Northwest Trustee Services, Inc.
            Trustee          File No. 7258.26126

After recording return to:
Chris Ashcraft
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

EXHIBIT     C
PAGE     1 OF 2

County, Oregon
2009 03:42:33 PM    **2009-070153**
D-MST    Cnt=1 Stn=7 K GRUNEWALD
$10.00 $5.00 $11.00 - Total = $26.00

01393440200900701530020026

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

FATCO. NO. 144202-TO

EXHIBIT    _C_
PAGE  _2_ OF _2_

## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain trust deed made by Dan E Williamson and Shannon Williamson, Husband and Wife as joint tenants, as grantors, to Land America, as trustee, in favor of Washington Mutual Bank, as beneficiary, dated 06/11/07, recorded 06/20/07, in the mortgage records of Washington County, Oregon, as 2007-068698, and subsequently assigned to by Assignment, covering the following described real property situated in said county and state, to wit:

Lot 32, Padgett Park, in the City of Hillsboro, County of Washington and State of Oregon.

PROPERTY ADDRESS: 767 Northwest Darnielle Street
Hillsboro, OR 97124

There is a default by the grantor or other person owing an obligation or by their successor in interest, the performance of which is secured by said trust deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums: monthly payments of $2,077.20 beginning 07/01/09; plus late charges of $85.99 each month beginning 07/16/10; plus prior accrued late charges of $0.00; plus advances of $604.18; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default, the beneficiary has declared all sums owing on the obligation secured by said trust deed immediately due and payable, said sums being the following, to wit: $254,000.00 with interest thereon at the rate of 8.125 percent per annum beginning 06/01/09; plus late charges of $85.99 each month beginning 07/16/10 until paid; plus prior accrued late charges of $0.00; plus advances of $604.18; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

---

NOTICE OF DEFAULT AND ELECTION TO SELL

RE: Trust Deed from
Williamson, Shannon and Dan E.
Grantor
to
Northwest Trustee Services, Inc.,
Successor Trustee          File No. 7258.26126

For Additional Information:
After Recording return to:
Chris Ashcraft
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997
(425) 586-1900

EXHIBIT ___D___
PAGE ___1___ OF _3_

Notice is hereby given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose the trust deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time grantor executed the trust deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the obligations secured by the trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and reasonable fees of trustee's attorneys.

The sale will be held at the hour of 10:00 o'clock A.M., in accord with the standard of time established by ORS 187.110 on November 19, 2010, at the following place: inside the main lobby of the Washington County Courthouse, 145 N.E. 2nd Avenue, in the City of Hillsboro, County of Washington, State of Oregon, which is the hour, date and place last set for the sale.

Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.745 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender bid information is also available at the trustee's website, www.northwesttrustee.com.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or trust deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753. Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary or if required by the terms of the loan documents.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com.

Northwest Trustee Services, Inc., Trustee
Northwest Trustee Services, Inc.

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that Chris Ashcraft is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as an Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: July 12, 2010

RUTH A. ALBERTS
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-12-14

NOTARY PUBLIC in and for the State of
Washington, residing at Sammamish
My commission expires 3-12-14

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

EXHIBIT _D_
PAGE _2_ OF _3_

County, Oregon    **2010-053061**

3/2010 03:33:00 PM

D-MDE6        Cnt=1  Stn=16  D HOFFMAN

$15.00 $5.00 $11.00 $15.00 - Total = $46.00

015000012010005306100030037

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

EXHIBIT ___D___

PAGE ___3___ OF ___3___

95
31
20 m

RECORDING COVER SHEET
Pursuant to ORS 205.234

After recording return to:

Northwest Trustee Services, Inc.
As successor trustee
Attention: Chris Ashcraft
P.O. Box 997
Bellevue, WA 98009-0997

Washington County, Oregon    **2010-091604**
11/18/2010 03:03:19 PM
D-MAF    Cnt=6 Stn=16 D HOFFMAN
$95.00 $20.00 $5.00 $11.00 $16.00 - Total = $148.00

01542833201000916040100101
I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

1. AFFIDAVIT OF MAILING – NOTICE OF FORECLOSURE

2. NOTICE OF FORECLOSURE

3. AFFIDAVIT OF NO TIMLEY RECEIPT OF REQUEST FOR LOAN
   MODIFICATION/MEETING UNDER ORS 86.737

4. AFFIDAVIT OF MAILING – TRUSTEE'S NOTICE OF SALE

5. TRUSTEE'S NOTICE OF SALE

6. PROOF OF SERVICE

7. AFFIDAVIT OF PUBLICATION

Original Grantor(s) on Trust Deed: Dan E Williamson and Shannon Williamson, Husband
and Wife as joint tenants

Beneficiary: Washington Mutual Bank

THIS COVER SHEET HAS BEEN PREPARED BY THE PERSON PRESENTING THE
ATTACHED INSTRUMENT FOR RECORDING. ANY ERRORS CONTAINED IN
THIS COVER SHEET DO NOT AFFECT THE TRANSACTION(S) CONTAINED IN
THE INSTRUMENT ITSELF.

EXHIBIT __E__

PAGE __1__ OF __19__

## AFFIDAVIT OF MAILING NOTICE OF FORECLOSURE

STATE OF WASHINGTON, County of KING) ss

I, the undersigned, being first duly sworn, depose and say and certify that:

At all times hereinafter mentioned, I was and now am a resident of the State of Washington, a competent person over the age of eighteen years and not the beneficiary or beneficiary's successor in interest named in the attached original Notice of Foreclosure given under the terms of that certain deed described in said notice.

I gave notice of the sale of the real property described in the attached Notice of Foreclosure as required by Section 20 of Chapter 19, Oregon Laws 2008 ("Bill") by mailing a copy thereof by both first class and certified mail with return receipt requested to each of the following named persons (or their legal representatives, where so indicated) at their respective last known address, to-wit:

See Attached Exhibit A

Said persons include (a) the grantor in the trust deed; (b) any successor in interest to the grantor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice and to the occupant residing in the Property

Each of the notices so mailed was certified to be a true copy of the original Notice of Foreclosure, each such copy was contained in a sealed envelope, with postage thereon fully prepaid, and was deposited by me in the United States post office at Bellevue, Washington, on ꓺ·ꓹꓸ·꓾ꓳꓲꓳ With respect to each person listed above, one such notice was mailed with postage thereon sufficient for first class delivery to the address indicated, and another such notice was mailed with a proper form to request and obtain a return receipt and postage thereon in the amount sufficient to accomplish the same. Each of said notices was mailed after the notice of default and election to sell was recorded. The form of the notice complies with Sections 20 and 21 of the Bill and a copy is enclosed with this affidavit.

As used herein, the singular includes the plural, trustee includes successor trustee and person includes corporation and any other legal or commercial entity.

_____

STATE OF WASHINGTON      )
                         ) ss
COUNTY OF KING           )

I certify that I know or have satisfactory evidence that ANDA    DEA is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 7-14-10

_____
NOTARY PUBLIC in and for the State of
Washington, residing at _____
My commission expires 9-22-2013

| AFFIDAVIT OF MAILING NOTICE OF |
| FORECLOSURE |
| RE: Trust Deed from |
| Williamson, Shannon and Dan E. |
| Grantor |
| to |
| Northwest Trustee Services, Inc., |
| Trustee |
| File No. 7258.26126 |

After recording return to:
Northwest Trustee Services, Inc.
Attn: Chris Ashcraft
P.O. Box 997
Bellevue, WA 98009-0997

DANE L. GILL
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
09-22-13

EXHIBIT _E_
PAGE _2_ OF _19_

**EXHIBIT A**

Shannon Williamson
767 Northwest Darnielle Street
Hillsboro, OR 97124

Dan E. Williamson
767 Northwest Darnielle Street
Hillsboro, OR 97124

Occupant(s)
767 Northwest Darnielle Street
Hillsboro, OR 97124

7258 26126
Chris Asherafi

EXHIBIT _E_
PAGE _3_ OF _19_

## NOTICE:
## YOU ARE IN DANGER OF LOSING YOUR PROPERTY
## IF YOU DO NOT TAKE ACTION IMMEDIATELY

This notice is about your mortgage loan on your property at:
767 Northwest Darnielle Street
Hillsboro, OR 97124
Hillsboro, OR 97124

Your lender has decided to sell this property because the money due on your mortgage loan has not been paid on time or because you have failed to fulfill some other obligation to your lender. This is sometimes called "foreclosure."

The amount you would have had to pay as of 07/13/2010 (date) to bring your mortgage loan current was $29044.66. The amount you must now pay to bring your loan current may have increased since that date.

By law, your lender has to provide you with details about the amount you owe, if you ask. You may call (866) 254-5790 to find out the exact amount you must pay bring your to mortgage loan current and to get other details about the amount you owe.

You may also get these details by sending a request by certified mail to:
Northwest Trustee Services, Inc.
PO Box 997
Bellevue, WA 98009-0997

## THIS IS WHEN AND WHERE YOUR PROPERTY WILL BE SOLD IF YOU
## DO NOT TAKE ACTION:
Date and time: 11/19/2010 at 10:00 AM
Place: inside the main lobby of the Washington County Courthouse, 145 N.E. 2nd Avenue, Hillsboro OR

---

## THIS IS WHAT YOU CAN DO TO STOP THE SALE:
1. You can pay the amount past due or correct any other default, up to five days before the sale.
2. You can refinance or otherwise pay off the loan in full anytime before the sale.
3. You can request that your lender give you more time or change the terms of your loan.
4. You can sell your home, provided the sale price is enough to pay what you owe.

---

EXHIBIT _E_
PAGE _4_ OF _19_

There are government agencies and nonprofit organizations that can give you information about foreclosure and help you decide what to do. For the name and phone number of an organization near you, please call the statewide phone contact number at **800-SAFENET (800-723-3638)**.

You may also wish to talk to a lawyer. If you need help finding a lawyer, you may call the Oregon State Bar's Lawyer Referral Service at **503-684-3763** or toll-free in Oregon at **800-452-7636** or you may visit its Web site at: **www.osbar.org**. Legal assistance may be available if you have a low income and meet federal poverty guidelines. For more information and a directory of legal aid programs, go to **http://www.oregonlawhelp.org**

Your lender may be willing to modify your loan to reduce the interest rate, reduce the monthly payments or both. You can get information about possible loan modification programs by contacting your lender at 866-550-5705. If you can't reach your lender, you may contact the trustee at the telephone number at the bottom of this notice. If you have already entered into a loan modification with your lender, it is possible that you will not be able to modify your loan again unless your circumstances have changed. Your lender is not obligated to modify your loan.

You may request to meet with your lender to discuss options for modifying your loan. During discussions with your lender, you may have the assistance of a lawyer, a housing counselor or another person of your choosing. To receive a referral to a housing counselor or other assistance available in your community, call this toll-free consumer mortgage foreclosure information number: **800-SAFENET (800-723-3638).** Many lenders participate in new federal loan modification programs. You can obtain more information about these programs at: **http://www.makinghomeaffordable.gov/**.

IF YOU WANT TO APPLY TO MODIFY YOUR LOAN, YOU MUST FILL OUT AND MAIL BACK THE ENCLOSED "MODIFICATION REQUEST FORM." YOUR LENDER MUST RECEIVE THE FORM BY 08/12/2010, WHICH IS 30 DAYS AFTER THE DATE SHOWN BELOW.

WARNING: You may get offers from people who tell you they can help you keep your property. You should be careful about those offers. Make sure you understand any papers you are asked to sign. If you have questions, talk to a lawyer or one of the organizations mentioned above before signing.

DATED: 07/13/2010
Trustee contact name: Chris Ashcraft
Trustee telephone number: 425-586-1900

EXHIBIT ___E___
PAGE _5_ OF _19_

7258.26126/Williamson, Shannon and Dan E

EXHIBIT _E_
PAGE _6_ OF _19_

# LOAN MODIFICATION REQUEST FORM

**Your home is at risk of foreclosure.** There may be options available to help you keep your home. If you want to request a loan modification, you must return this form to the address below by 08/12/2010, which is 30 days from the date the Trustee signed the accompanying Notice:

Northwest Trustee Services, Inc.
PO Box 997
Bellevue, WA 98009-0997

There may be options available to you, including:

1) Modifying your loan terms
2) Temporarily lowering payments
3) Scheduling payments to cure the arrears
4) Temporary suspension of payments
5) Other options based on your lender and the type of loan.

In order to discuss your loan options, you should gather and provide the following documents:

1) Last year's tax returns
2) Pay stubs for the last 2 months
3) Bank statements for the last 3 months
4) Other documents showing your financial hardship status
5) Your lender may request that you complete additional forms or provide additional information

**RETURNING THIS REQUEST DOES NOT MODIFY YOUR LOAN. Your lender is required to contact you within 45 days after you return this form to discuss a possible loan modification. The foreclosure sale will not occur until your lender has contacted you about your request. YOUR LENDER IS NOT REQUIRED TO MODIFY YOUR LOAN. The foreclosure sale may proceed if your loan is not modified.**

**REQUEST A MEETING.** Before the lender responds to your request for a loan modification, you may request IN WRITING a meeting with the lender. Upon receipt of your written request for a meeting, the lender will attempt to contact you by mail, telephone or e-mail to schedule a meeting in person or by telephone at the lender's option. NOTE: It is important that you respond immediately to any contact from your lender to schedule a meeting that you have requested. If you do not respond within 7 days from the date your lender attempts to contact you to schedule a meeting, your lender may refuse to meet, deny your request for consideration of a loan modification and resume foreclosure activities.

File No.             7258.26126
Loan No.:            0730247715
Borrower Name:       Williamson, Shannon and Dan E.
Property Address:    767 Northwest Darnielle Street

Hillsboro, OR 97124, Hillsboro, OR 97124

Please indicate where your lender may contact you:

Mailing Address: _____

Home Telephone Number: _____    Work Telephone Number: _____

Email: _____ (providing your e-mail address authorizes the lender or its agent to communicate with you by e-mail concerning your request for loan modification consideration and for the purpose of scheduling and confirming a meeting.

EXHIBIT  _E_
PAGE  _7_ OF _19_

Affidavit of No Timely Receipt of Request for Loan
Modification or Meeting ORS 86.737
Re: Trust Deed from
**Dan E Williamson and Shannon Williamson,**
**Husband and Wife as joint tenants**
        Grantor
        to
**Northwest Trustee Services, Inc.**
        Trustee              File No. **7258.26126**

### Affidavit of No Timely Receipt of Request for Loan Modification/Meeting
### Under ORS 86.737

**Original Loan Amount:** $254,000.00
**Borrower name(s):** Williamson, Shannon and Dan E.
**Property Address:** 767 Northwest Darnielle Street, Hillsboro, OR 97124

The undersigned is an employee of the trustee under the trust deed securing the above-referenced loan and is executing this affidavit on behalf of the trustee. The undersigned is at least 18 years of age and competent to testify in a court of law and, having personal knowledge of the matters set forth below, represents and avers, under the penalty of perjury, that the following is true and correct:
**No Request for Meeting or Loan Modification Received.** The trustee duly mailed to the borrower(s) identified above the notice required by ORS 86.737 ("Notice"). With the Notice, the trustee also included the form contemplated by ORS 86.737 on which the borrower(s) could elect to ask the beneficiary to consider granting a loan modification ("Form"). The Notice also invited the borrower(s) to request a meeting. The Notice and/or request form instructed the borrower(s) to submit the request for modification and/or meeting to the trustee at the address provided in the Notice and/or form. The Notice also provided a deadline date by which the trustee would need to receive from the borrower(s) a request for loan modification or request for a meeting. The trustee did not receive a request for loan modification form or request for meeting from the borrower(s) before the deadline set forth in the Notice.
**Limited Agency.** In executing this affidavit, the trustee is acting as the beneficiary's agent for the sole and limited purpose of executing this affidavit.
**Disclaimer.** The trustee is executing and recording this affidavit only because title insurers have compelled it to do so as a title insurance underwriting requirement. The trustee does not believe that an affidavit is legally required by ORS 86.737 in circumstances where the borrower has not timely submitted a request for a loan modification or a meeting under the ORS 86.737.
**No Statement Concerning Borrower's Other Contacts with the Beneficiary.** Nothing in this affidavit may be construed as an averment that the borrower has not contacted the beneficiary to arrange a meeting or discuss a loan modification or other arrangement outside the procedural framework of ORS 86.737.

EXHIBIT _E_
PAGE _8_ OF _19_

DATED: _____11/12/10_____

Northwest Trustee Services, Inc.

By: _____

STATE OF WASHINGTON )
                     ) ss:
COUNTY OF KING       )

    I certify that I know or have satisfactory evidence that _Chris Ashcraft_ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _11-12-10_

NOTARY PUBLIC in and for the State of
Washington, residing at _____
My commission expires _9-22-2013_

DANE L. GILL
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
09-22-13

EXHIBIT _E_
PAGE _9_ OF _19_

## AFFIDAVIT OF MAILING TRUSTEE'S NOTICE OF SALE

STATE OF WASHINGTON, County of KING) ss:

I, the undersigned, being first duly sworn, depose and say and certify that

At all times hereinafter mentioned, I was and now am a resident of the State of Washington, a competent person over the age of eighteen years and not the beneficiary or beneficiary's successor in interest named in the attached original notice of sale given under the terms of that certain deed described in said notice.

I gave notice of the sale of the real property described in the attached notice of sale by mailing a copy thereof by both firstclass and certified mail with return receipt requested to each of the following named persons (or their legal representatives, where so indicated) at their respective last known address, to-wit:

Shannon Williamson
767 Northwest Danielle Street
Hillsboro, OR 97124

Dan E. Williamson
767 Northwest Danielle Street
Hillsboro, OR 97124

Occupant(s)
767 Northwest Danielle Street
Hillsboro, OR 97124

Said persons include (a) the grantor in the trust deed, (b) any successor in interest to the grantor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice, (c) any person, including the Department of Revenue or any other state agency, having a lien or interest subsequent to the trust deed if the lien or interest appears of record or the beneficiary has actual notice of the lien or interest, and (d) any person requesting notice, as required by ORS 86.785.

Each of the notices so mailed was certified to be a true copy of the original notice of sale, each such copy was contained in a sealed envelope, with postage thereon fully prepaid, and was deposited by me in the United States post office at Bellevue, Washington, on 7-21-10. With respect to each person listed above, one such notice was mailed with postage thereon sufficient for first class delivery to the address indicated, and another such notice was mailed with a proper form to request and obtain a return receipt and postage thereon in the amount sufficient to accomplish the same. Each of said notices was mailed after the notice of default and election to sell described in said notice of sale was recorded.

As used herein, the singular includes the plural, trustee includes successor trustee, and person includes corporation and any other legal or commercial entity.

*Catherine Lyle*

STATE OF WASHINGTON )
                    ) ss.
COUNTY OF KING )

I certify that I know or have satisfactory evidence that Catherine Lyle is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 7-21-10

NOTARY PUBLIC in and for the State of
Washington, residing at _____
My commission expires _____

AFFIDAVIT OF MAILING TRUSTEE'S NOTICE OF SALE
RE: Trust Deed from
Williamson, Shannon and Dan E.
        Grantor
    to
Northwest Trustee Services, Inc.,
        Trustee          File No. 7258.26126
After recording return to:
Northwest Trustee Services, Inc.
Successor by merger to Northwest Trustee Services, PLLC
(formerly known as Northwest Trustee Services, LLC)
Attn: Chris Ashcraft
P.O. Box 997
Bellevue, WA 98009-0997

DANE L. GILL
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
09-22-13

EXHIBIT E
PAGE 10 OF 19

## TRUSTEE'S NOTICE OF SALE

Reference is made to that certain trust deed made by Dan E Williamson and Shannon Williamson, Husband and Wife as joint tenants, as grantor, to Land America, as trustee, in favor of Washington Mutual Bank, as beneficiary, dated 06/11/07, recorded 06/20/07, in the mortgage records of Washington County, Oregon, as 2007-068698 and subsequently assigned to by Assignment recorded as , covering the following described real property situated in said county and state, to wit:

Lot 32, Padgett Park, in the City of Hillsboro, County of Washington and State of Oregon.

PROPERTY ADDRESS   767 Northwest Darnielle Street
                   Hillsboro, OR 97124

Both the beneficiary and the trustee have elected to sell the real property to satisfy the obligations secured by the trust deed and a notice of default has been recorded pursuant to Oregon Revised Statutes 86.735(3); the default for which the foreclosure is made is grantor's failure to pay when due the following sums: monthly payments of $2,077.20 beginning 07/01/09; plus late charges of $85.99 each month beginning 07/16/10; plus prior accrued late charges of $0.00; plus advances of $604.18; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, said sums being the following, to wit: $254,000.00 with interest thereon at the rate of 8.125 percent per annum beginning 06/01/09; plus late charges of $85.99 each month beginning 07/16/10 until paid; plus prior accrued late charges of $0.00; plus advances of $604.18; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

WHEREFORE, notice hereby is given that the undersigned trustee will on November 19, 2010 at the hour of 10:00 o'clock, A.M. in accord with the standard of time established by ORS 187.110, at the following place: inside the main lobby of the Washington County Courthouse, 145 N.E. 2nd Avenue, in the City of Hillsboro, County of Washington, State of Oregon, sell at public auction to the highest bidder for cash the interest in the described real property which the grantor had or had power to convey at the time of the execution by grantor of the trust deed, together with any interest which the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.757 and 86.759 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender bid information is also available at the trustee's website, www.northwesttrustee.com. Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or trust deed, and in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753. Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary or if required by the terms of the loan documents.

EXHIBIT ___E___
PAGE _11_ OF _19_

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

---

### NOTICE TO RESIDENTIAL TENANTS

The property in which you are living is in foreclosure. A foreclosure sale is scheduled for November 19, 2010. Unless the lender who is foreclosing on this property is paid, the foreclosure will go through and someone new will own this property.

The following information applies to you only if you occupy and rent this property as a residential dwelling under a legitimate rental agreement. The information does not apply to you if you own this property or if you are not a residential tenant.

If the foreclosure goes through, the business or individual who buys this property at the foreclosure sale has the right to require you to move out. The buyer must first give you an eviction notice in writing that specifies the date by which you must move out. The buyer may not give you this notice until after the foreclosure sale happens. If you do not leave before the move-out date, the buyer can have the sheriff remove you from the property after a court hearing. You will receive notice of the court hearing.

### FEDERAL LAW REQUIRES YOU TO BE NOTIFIED

IF YOU ARE OCCUPYING AND RENTING THIS PROPERTY AS A RESIDENTIAL DWELLING UNDER A LEGITIMATE RENTAL AGREEMENT, FEDERAL LAW REQUIRES THE BUYER TO GIVE YOU NOTICE IN WRITING A CERTAIN NUMBER OF DAYS BEFORE THE BUYER CAN REQUIRE YOU TO MOVE OUT. THE FEDERAL LAW THAT REQUIRES THE BUYER TO GIVE YOU THIS NOTICE IS EFFECTIVE UNTIL DECEMBER 31, 2012. Under federal law, the buyer must give you at least 90 days' notice in writing before requiring you to move out. If you are renting this property under a fixed-term lease (for example, a six-month or one-year lease), you may stay until the end of your lease term. If the buyer wants to move in and use this property as the buyer's primary residence, the buyer can give you written notice and require you to move out after 90 days, even if you have a fixed-term lease with more than 90 days left.

### STATE LAW NOTIFICATION REQUIREMENTS

IF THE FEDERAL LAW DOES NOT APPLY, STATE LAW STILL REQUIRES THE BUYER TO GIVE YOU NOTICE IN WRITING BEFORE REQUIRING YOU TO MOVE OUT IF YOU ARE OCCUPYING AND RENTING THE PROPERTY AS A TENANT IN GOOD FAITH. EVEN IF THE FEDERAL LAW REQUIREMENT IS NO LONGER EFFECTIVE AFTER DECEMBER 31, 2012, THE REQUIREMENT UNDER STATE LAW STILL APPLIES TO YOUR SITUATION. Under state law, if you have a fixed-term lease (for example, a six-month or one-year lease), the buyer must give you at least 60 days' notice in writing before requiring you to move out. If the buyer wants to move in and use this property as the buyer's primary residence, the buyer can give you written notice and require you to move out after 30 days, even if you have a fixed-term lease with more than 30 days left.

If you are renting under a month-to-month or week-to-week rental agreement, the buyer must give you at least 30 days' notice in writing before requiring you to move out.

IMPORTANT: For the buyer to be required to give you notice under state law, you must prove to the business or individual who is handling the foreclosure sale that you are occupying and renting this property as a residential dwelling under a legitimate rental agreement. The name and address of the business or individual who is handling the foreclosure sale is shown on this notice under the heading 'TRUSTEE.' You must mail or deliver your proof not later than October 20, 2010 (30 days before the date first set for the foreclosure sale). Your proof must be in writing and should be a copy of your rental agreement or lease. If you do not have a written rental agreement or lease, you can provide other proof, such as receipts for rent you paid.

### ABOUT YOUR SECURITY DEPOSIT

Under state law, you may apply your security deposit and any rent you paid in advance against the current rent you owe your landlord. To do this, you must notify your landlord in writing that you want to subtract the amount of your security deposit or prepaid rent from your rent payment. You may do this only for the rent you owe your current landlord. If you do this, you must do so before the foreclosure sale. The business or individual who buys this property at the foreclosure sale is not responsible to you for any deposit or prepaid rent you paid to your landlord.

EXHIBIT E
PAGE 12 OF 19

## ABOUT YOUR TENANCY AFTER THE FORECLOSURE SALE

The business or individual who buys this property at the foreclosure sale may be willing to allow you to stay as a tenant instead of requiring you to move out. You should contact the buyer to discuss that possibility if you would like to stay. Under state law, if the buyer accepts rent from you, signs a new residential rental agreement with you or does not notify you in writing within 30 days after the date of the foreclosure sale that you must move out, the buyer becomes your new landlord and must maintain the property. Otherwise, the buyer is not your landlord and is not responsible for maintaining the property on your behalf and you must move out by the date the buyer specifies in a notice to you.

YOU SHOULD CONTINUE TO PAY RENT TO YOUR LANDLORD UNTIL THE PROPERTY IS SOLD TO ANOTHER BUSINESS OR INDIVIDUAL OR UNTIL A COURT OR A LENDER TELLS YOU OTHERWISE. IF YOU DO NOT PAY RENT, YOU CAN BE EVICTED. AS EXPLAINED ABOVE, YOU MAY BE ABLE TO APPLY A DEPOSIT YOU MADE OR PREPAID RENT YOU PAID AGAINST YOUR CURRENT RENT OBLIGATION. BE SURE TO KEEP PROOF OF ANY PAYMENTS YOU MAKE AND ANY NOTICE YOU GIVE OR RECEIVE CONCERNING THE APPLICATION OF YOUR DEPOSIT OR YOUR PREPAID RENT.

IT IS UNLAWFUL FOR ANY PERSON TO TRY TO FORCE YOU TO LEAVE YOUR HOME WITHOUT FIRST GOING TO COURT TO EVICT YOU. FOR MORE INFORMATION ABOUT YOUR RIGHTS, YOU MAY WISH TO CONSULT A LAWYER. If you believe you need legal assistance with this matter, you may contact the Oregon State Bar Association (16037 Upper Boones Ferry Road, Tigard, Oregon 97224, (503)620-0222, toll-free in Oregon (800)452-8260) and ask for lawyer referral service. If you do not have enough money to pay a lawyer and are otherwise eligible, you may be able to receive legal assistance for free. Information about whom to contact for free legal assistance a county-by-county listing of legal aid resources may be found on the Internet at http://www.osbar.org/public/ris/lowcostlegalhelp/legalaid.html.

---

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.

Dated: July 15   30 10

Northwest Trustee Services, Inc.
By
Assistant Vice President
Northwest Trustee Services, Inc.

For further information, please contact:

Chris Ashcraft
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997
(425) 586-1900
File No 7258.26126/Williamson, Shannon and Dan E.

EXHIBIT _E_
PAGE _13_ OF _19_

State of Washington, County of King) ss:

I, the undersigned, certify that the foregoing is a complete and accurate copy of the original trustee's notice of sale.

_____

By Authorized Signer

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

EXHIBIT __E__
PAGE __4__ OF __19__

## AFFIDAVIT OF MAILING TRUSTEE'S NOTICE OF SALE TO OCCUPANT
### (In Lieu of Personal Service)

STATE OF WASHINGTON, County of KING) ss:

I, the undersigned, being first duly sworn, depose and say and certify that:

At all times hereinafter mentioned, I was and now am a resident of the State of Washington, a competent person over the age of eighteen years and not the beneficiary or beneficiary's successor in interest named in the attached original notice of sale given under the terms of that certain deed described in said notice.

On July 28, 2010, I caused to be deposited in the United States post office at Bellevue, Washington a copy of the attached Notice of Trustee's Sale ("Notice"). The Notice was sealed in an envelope addressed to "Occupant" at 767 Northwest Darnielle Street, Hillsboro, OR, 97124 and sufficient postage was affixed to the envelope for first class delivery to the address indicated.

_Mataya Boggs_

STATE OF WASHINGTON )
                                   ) ss.
COUNTY OF KING )

I certify that I know or have satisfactory evidence that Mataya Boggs is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: _7/28/10_

Notary Public
State of Washington
THERESA I. REDULLA
MY COMMISSION EXPIRES
March 18, 2014

_Theresa I. Redulla_

NOTARY PUBLIC in and for the State of
Washington, residing at _KING_
My commission expires _3-18-14_

7258.26126 / Williamson, Shannon and Dan E.
Chris Ashcraft

EXHIBIT _E_
PAGE _15_ OF _19_

# FEI, LLC
## Affidavit of Posting and Service

State of Oregon
County of Washington

MARK PALFENIER, being sworn, says:

- That I am over 18 years of age, a resident of Oregon, and not a party to the proceeding referred to in the attached Notice of Trustee's Sale:

- That my business address is PO BOX 822424, Vancouver, WA.

- That I posted a copy of the Notice of Trustee's Sale on the parcel of land described in the attached Notice of Trustee's Sale, commonly referred to as 767 Northwest Darnielle Street, Hillsboro, OR 97124 in a conspicuous place on:

  o   1st Attempt:  07/18/2010 at 11:22 am
  o   2nd Attempt:  07/21/2010 at 03:01 pm
  o   3rd Attempt:  07/26/2010 at 03:04 pm

Signed in Washington County, Oregon by:

_____  8/18/10
Signature
Date

1002.130303

State of Oregon
County of _washington_

On this _18th_ day of _August_ in the year of _2010_, before me a Notary Public, Personally appeared _Mark Palfenier_ known or identified to me to be the person whose name is subscribed to the within instrument, and being by me first duly sworn, declared that the statements therein are true, and acknowledged to me that he/she executed the same.

_____
Notary Public for Oregon
Residing at _Vancouver Wa_
Commission expires: _2-28-14_

OFFICIAL SEAL
CHAD L GILLINGHAM
NOTARY PUBLIC-OREGON
COMMISSION NO. 446987
MY COMMISSION EXPIRES FEBRUARY 28, 2014



EXHIBIT ___E___
PAGE _16_ OF _19_



**PACIFIC PUBLISHING COMPANY**

## Oregon Legal Journal

County of Washington

## AFFIDAVIT OF PUBLICATION

State Of Oregon

Invoice Number
24239

I, Sarah Beehler, being first duly sworn, depose and say that I am an authorized representative of the Oregon Legal Journal, a newspaper of general circulation published at 11830 SW Kerr #385 Lake Oswego, OR 97035, in the aforesaid county and state as defined by ORS 193.010 and 193.020; that I know from my personal knowledge that a printed section, 09/16/10 containing Trustee's Notice of Sale legal notices, a printed copy of which is hereto annexed, was inserted into the entire circulation of the said newspaper edition for 4 consecutive dates ending with the issue dated 09/16/10 on behalf of the advertiser FEI LLC

1002.130303        Williamson, Shannon and Dan E.

Subscribed and sworn to me this
09/14/10
SEE ATTACHMENT / EXHIBIT

FEI LLC
PO Box 210
Bellevue, WA
98009-0219

OFFICIAL SEAL
BRANDI R WILLIAMS
NOTARY PUBLIC-OREGON
COMMISSION NO. 433703
MY COMMISSION EXPIRES DECEMBER 14, 2012

EXHIBIT _E_
PAGE _17_ OF _19_

TRUSTEE'S NOTICE OF SALE Reference is made to that certain trust deed made by Den E Williamson and Shannon Williamson, Husband and Wife as joint tenants, as grantor, to Land America, as trustee, in favor of Washington Mutual Bank, as beneficiary, dated 06/11/07, recorded 06/20/07, in the mortgage records of Washington County, Oregon, as 2007-068888 and subsequently assigned to by Assignment recorded as, covering the following described real property situated in said county and state, to wit: Lot 32, Padget Park, in the City of Hillsboro, County of Washington and State of Oregon. PROPERTY ADDRESS: 787 Northwest Daniele Street Hillsboro OR 97124 Both the beneficiary and the trustee have elected to sell the real property to satisfy the obligations secured by the trust deed and a notice of default has been recorded pursuant to Oregon Revised Statutes 86.735(3); the default for which the foreclosure is made is grantor's failure to pay when due the following sums: monthly payments of $2,077.20 beginning 07/01/09; plus late charges of $85.99 each month beginning 07/16/10; plus prior accrued late charges of $0.00; plus advances of $604.18; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default, any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable. By reason of said default the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, said sums being the following, to wit: $254,000.00 with interest thereon at the rate of 8.125 percent per annum beginning 06/01/09; plus late charges of $85.99 each month beginning 07/16/10 until paid; plus prior accrued late charges of $0.00; plus advances of $604.18; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default, any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable. WHEREFORE, notice hereby is given that the undersigned trustee will on November 19, 2010 at the hour of 10:00 o'clock, A.M. in accord with the standard of time established by ORS 187.110, at the following place: inside the main lobby of the Washington County Courthouse, 145 N.E. 2nd Avenue in the City of Hillsboro, County of Washington, State of Oregon, sell at public auction to the highest bidder for cash the interest in the described real property which the grantor had or had power to convey at the time of the execution by grantor of the trust deed, together with any interest which the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.752 and 86.759 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested; addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender

bid information is also available at the trustee's website: www.northwesttrustee.com. Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by rendering the performance required under the obligation or trust deed, and in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753. Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary, or if required by the terms of the loan documents. In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any. NOTICE TO RESIDENTIAL TENANTS The property in which you are living is in foreclosure. A foreclosure sale is scheduled for November 19, 2010. Unless the lender who is foreclosing on this property is paid the foreclosure will go through and someone new will own this property. The following information applies to you only if you occupy and rent this property as a residential dwelling under a legal rental agreement. The information does not apply to you if you own this property or if you are not a residential tenant. If the foreclosure goes through, the business or individual who buys this property at the foreclosure sale has the right to require you to move out. The buyer must first give you an eviction notice in writing that specifies the date by which you must move out. The buyer may not give you this notice until after the foreclosure sale happens. If you do not leave before the move-out date, the buyer can have the sheriff remove you from the property after a court hearing. You will receive notice of the court hearing. FEDERAL LAW REQUIRES YOU TO BE NOTIFIED IF YOU ARE OCCUPYING AND RENTING THIS PROPERTY AS A RESIDENTIAL DWELLING UNDER A LEGITIMATE RENTAL AGREEMENT. FEDERAL LAW REQUIRES THE BUYER TO GIVE YOU NOTICE IN WRITING A CERTAIN NUMBER OF DAYS BEFORE THE BUYER CAN REQUIRE YOU TO MOVE OUT. THE FEDERAL LAW THAT REQUIRES THE BUYER TO GIVE YOU THIS NOTICE IS EFFECTIVE UNTIL DECEMBER 31, 2012. Under federal law, the buyer must give you at least 90 days' notice in writing before requiring you to move out. If you are renting this property under a fixed-term lease (for example, a six-month or one-year lease), you may stay until the end of your lease term. If the buyer wants to move in and use this property as the buyer's primary residence, the buyer can give you written notice and require you to move out after 90 days, even if you have a fixed-term lease with more than 90 days left. STATE LAW NOTIFICATION REQUIREMENTS: IF THE FEDERAL LAW DOES NOT APPLY, STATE LAW STILL REQUIRES THE

you, signs a new residential rental agreement with you or does not notify you in writing within 30 days after the date of the foreclosure sale that you must move out, the buyer becomes your new landlord and must maintain the property. Otherwise, the buyer is not your landlord and is not responsible for maintaining the property on your behalf and you must move out by the date the buyer specifies in a notice to you. YOU SHOULD CONTINUE TO PAY RENT TO YOUR LANDLORD UNTIL THE PROPERTY IS SOLD TO ANOTHER BUSINESS OR INDIVIDUAL OR UNTIL A COURT OR A LENDER TELLS YOU OTHERWISE. IF YOU DO NOT PAY RENT, YOU CAN BE EVICTED. AS EXPLAINED ABOVE, YOU MAY BE ABLE TO APPLY A DEPOSIT YOU MADE OR PREPAID RENT YOU PAID AGAINST YOUR CURRENT RENT OBLIGATION. BE SURE TO KEEP PROOF OF ANY PAYMENTS YOU MAKE AND ANY NOTICE YOU GIVE OR RECEIVE CONCERNING THE APPLICATION OF YOUR DEPOSIT OR YOUR PREPAID RENT. IT IS UNLAWFUL FOR ANY PERSON TO TRY TO FORCE YOU TO LEAVE YOUR HOME WITHOUT FIRST GOING TO COURT TO EVICT YOU. FOR MORE INFORMATION ABOUT YOUR RIGHTS, YOU MAY WISH TO CONSULT A LAWYER. If you believe you need legal assistance with this matter, you may contact the Oregon State Bar Association (16037 Upper Boones Ferry Road - Tigard, Oregon 97224 (503)620-0222 - toll-free from (800)452-8260) and ask for lawyer referral service. If you do not have enough money to pay a lawyer and are otherwise eligible you may be able to receive legal assistance for free. Information about whom to contact for free legal assistance, a county-by-county listing of legal aid resources may be found on the Internet at http://www.osbar.org/public /ridocs/costlegalhelp/legalaid.html. The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com. For further information, please contact: Chris Ashcraft Northwest Trustee Services, Inc. P.O. Box 997 Bellevue, WA 98009-0997 586-1900 Williamson, Shannon and Den E (TS# 7258.26126) 1002130303 FEI

$2,077.20 beginning 07/01/09; plus late charges of $85.99 each month beginning 07/16/10; plus prior accrued late charges of $0.00; plus advances of $604.18; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default, any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable. By reason of said default, the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, said sums being the following, to wit: $254,000.00 with interest thereon at the rate of 8.125 percent per annum beginning 06/01/09; plus late charges of $85.99 each month beginning 07/16/10, until paid; plus prior accrued late charges of $0.00; plus advances of $604.18; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable. WHEREFORE, notice hereby is given that the undersigned trustee will on November 19, 2010 at the hour of 10:00 o'clock, A.M. in accord with the standard of time established by ORS 187.110, at the following place: inside the main lobby of the Washington County Courthouse, 145 N.E. 2nd Avenue, in the City of Hillsboro, County of Washington, State of Oregon, sell at public auction to the highest bidder, for cash the interest in the described real property which the grantor had or had power to convey at the time of the execution by grantor of the trust deed, together with any interest which the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.752 and 86.759 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested; addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender

✗ See attached

EXHIBIT  E
PAGE  18  OF  19

TRUSTEE'S NOTICE OF SALE Reference is made to that certain trust deed made by Dan E. Williamson and Shannon Williamson, Husband and Wife as joint tenants, as grantor, to Land America, as trustee, in favor of Washington Mutual Bank, as beneficiary, dated 06/11/07, recorded 06/20/07, in the mortgage records of Washington County, Oregon, as 2007-068698 and subsequently assigned to by Assignment recorded as ..., covering the following described real property situated in said county and state, to wit: Lot 32, Plgated Park, in the City of Hillsboro, County of Washington and State of Oregon. PROPERTY ADDRESS: 767 Northwest Danielle Street, Hillsboro, OR  97124...

...page attached for clarification

EXHIBIT E

PAGE 19 OF 19

Washington County, Oregon       2011-026163
04/08/2011 02:56:12 PM
D-DTR        Cnt=1  Stn=22  I REED
$15.00 $5.00 $11.00 $15.00 - Total = $46.00

0158733920110026163003003

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

EXHIBIT ___F___
PAGE ___1___ OF ___3___

## TRUSTEE'S DEED

THIS INDENTURE, made April 4, 2011, between Northwest Trustee Services, Inc., hereinafter called the Trustee and JPMorgan Chase Bank, National Association, hereinafter called the second party;

### RECITALS:

RECITALS: Dan E Williamson and Shannon Williamson, Husband and Wife as joint tenants, as grantors, executed and delivered to: Land America, as trustee, for the benefit of Washington Mutual Bank, as beneficiary, a trust deed dated 06/11/07, duly recorded on 06/20/07 in the mortgage records of Washington County, Oregon in 2007-068698. In the trust deed, the real property described below ("Property") was conveyed by the grantor to the trustee to secure, among other things, the performance of the grantor's obligations to the beneficiary. The grantor thereafter defaulted in the performance of those obligations and such default(s) still existed at the time of the trustee's sale of the Property described below.

Because of the default(s), the record beneficiary under the trust deed or its predecessor declared all sums secured by the trust deed immediately due and owing; therefore, a Notice of Default, containing an election to sell the Property and to foreclose the trust deed by advertisement and sale to satisfy grantor's obligations owed to the beneficiary was recorded in the mortgage records of the county in which the Property is located on 07/13/10, in 2010-053061.

After recording the Notice of Default, the trustee gave notice to the grantor(s) and/or occupants pursuant ORS 86.737 by mailing said notice by both first class and certified mail with return receipt requested. Trustee gave notice of the time for and place of sale of the Property as required by law; copies of the Trustee's Notice of Sale were served pursuant to ORCP 7D.(2) and 7D.(3) or mailed by both first class and certified mail with return receipt requested to the last known address of the persons or their legal representatives, if any, named in ORS 86.740(1) and (2)(a), at least 120 days before the date the Property was sold, and the Trustee's Notice of Sale was mailed by first class and certified mail with return receipt requested, to the last-known address of the guardian, conservator or administrator or executor of any person named in ORS 86.740(1), promptly after the trustee received knowledge of the disability, insanity or death of any such person; the Trustee's Notice of Sale was served upon occupants of the Property in the manner in which a summons is served pursuant to ORCP 7D.(2) and 7D.(3) at least 120 days before the date the Property was sold, pursuant to ORS 86.750(1). If the foreclosure was stayed and released from stay, copies of an Amended Notice of Sale in the form required by ORS 86.755(6) were mailed within thirty days after release from stay by registered or certified mail to the last-known address of those persons listed in ORS 86.740 and 86.750(1) and any person requesting notice who was present at the time and place set for the sale which was stayed. Further, the trustee published a copy of the Trustee's Notice of Sale in a newspaper of general circulation in each county in which the Property is located, once a week for four successive weeks; the last publication of Notice of Trustee's Sale occurred more than twenty days prior to the date of sale. Compliance with the ORS 86.737 and the mailing, service and publication of the Trustee's Notice of Sale are evidenced by one or more affidavits or proofs of service duly recorded prior to the date of sale in the official records of the county in which the Property is located.

| | |
|---|---|
| Northwest Trustee Services, Inc.<br>P.O. Box 997<br>Bellevue, WA 98009-0997;<br>                                             Grantor | FOR COUNTY USE: |
| JPMorgan Chase Bank, National Association<br>7255 BayMeadows Way<br>Jacksonville, FL 32256;<br>Grantee | |
| After Recording Return to:<br>Northwest Trustee Services, Inc.<br>P.O. Box 997<br>Bellevue, WA 98009-0997        7258.26126 | |
| Until a change is required all tax statements shall be sent to the<br>following address:<br>JPMorgan Chase Bank, National Association<br>7255 BayMeadows Way<br>Jacksonville, FL 32256 | |

Consideration:        $139,652.40

FATCO. NO. 144-2026-TO

The trustee has no actual notice of any person, other than the persons identified in the affidavit(s) and proof(s) of mailing and/or service, having or claiming any lien on or interest in the Property, entitled to notice pursuant to ORS 86.740(1)(b) or (1)(c).

Pursuant to the Notice of Trustee's Sale, the trustee -- one or more due public proclamations of the sale's postponement and/or an Amended Notice of Trustee's Sale, on March 29, 2011, at 10:00 a.m. in accord with the standard of time established by ORS 187.110, and at the place so fixed for sale, in full accordance with the laws of the State of Oregon and pursuant to the powers conferred upon said trustee by the trust deed -- sold the Property in one parcel at public auction to JPMorgan Chase Bank, National Association for the sum of $139,652.40, JPMorgan Chase Bank, National Association being the highest and best bidder at the sale. The true and actual consideration paid for this transfer is the sum of $139,652.40

NOW, THEREFORE, in consideration of the sum of $139,652.40 paid by JPMorgan Chase Bank, National Association in cash, the receipt of which is acknowledged, and by the authority vested in the trustee by the laws of the State of Oregon and by the trust deed, the trustee does hereby convey, JPMorgan Chase Bank, National Association all interest the grantor had or had the power to convey at the time of grantor's execution of the trust deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the trust deed in and to the Property, which is legally described as follows:

Lot 32, Padgett Park, in the City of Hillsboro, County of Washington and State of Oregon.

Commonly known as: 767 Northwest Darnielle Street, Hillsboro, OR 97124

This conveyance is made without representations or warranties of any kind. By recording this Trustee's Deed, Grantee understands, acknowledges and agrees that the Property was purchased in the context of a foreclosure, that the trustee made no representations to Grantee concerning the Property and that the trustee owed no duty to make disclosures to Grantee concerning the Property, Grantee relying solely upon his/her/their/its own due diligence investigation before electing to bid for the Property

IN WITNESS WHEREOF, the undersigned trustee has executed this document; if the undersigned is a corporation, it has caused its corporate name to be signed and its seal affixed hereto by an officer or other person duly authorized thereunto by order of its Board of Directors.

STATE OF WASHINGTON )
                    ) ss.
COUNTY OF KING )

Northwest Trustee Services, Inc., Trustee

I certify that I know or have satisfactory evidence that _____ **Heather Wexfall** _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as an Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: April 4, 2011

JULIE BOUFFLEUR
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
02-23-13

NOTARY PUBLIC in and for the State of
Washington, residing at King Co.
My commission expires 02/23/2013.

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES AND TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930

EXHIBIT  _1_
PAGE  _3_